C. S. LITZENBERGER AND OTHERS, RESPONDENTS, *v.* JARVIS-CONKLIN TRUST COMPANY, APPELLANT.

EQUITY.—RECEIVER.—LABORERS' LIENS.—Appellant, under a trust deed, took possession of the property of a street railway company on October 8th, 1890, and continued to operate the same until December 22d, 1890, when the property under order of the court went into the hands of a receiver, and afterwards on January 2, 1891, respondents filed their petition for wages during the 60 days next preceding the appointment of the receiver and on January 9th, 1891, no answer having been filed

to the petition, it was referred to the receiver to ascertain the amounts due the respondents, which amounts the receiver reported and the court upon the receiver's report, allowed the claims; *held* that in this action the court committed no error.

ID.—ID.—OPERATING EXPENSES.—FIRST LIEN.—Where a receiver had been in possession of the railway property for eleven days, and respondents filed their petition for wages for operating the property for sixty days preceding the appointment of the receiver, and where the proceeds of the property and its continued use and operation, which were the result in part of respondent's labor, had gone to the owners of the property and the mortgagees in possession under a trust deed; *held* that such wages for operating expenses prior to the appointment of the receiver, were a first lien on the property.

APPEAL from a judgment of the district court of the first district. The opinion states the facts.

*Messrs. Rhodes and Hudson,* for the appellant.

*Messrs. Miller and McGinnis* for the respondents.

ZANE, C. J.:

It appears from the record on this appeal that the Ogden City Railway Company was the owner of a street railway in Ogden City, operated by it, and on which it had executed a deed of trust to the Jarvis-Conklin Mortgage Trust Company, to secure $80,000 of its bonds, and that on the 8th day of October, 1890, the latter took possession of the road, and continued to operate it, and appropriate its earnings, until the 22d day of December, 1890, when, under an order of the court it went into the hands of Warren W. Corey as receiver ; that on the 2d day of January, 1891, the plaintiff C. S. Litzenberger and 13 others filed their petition in the case, in which they represented that the Ogden City Railway Company was

indebted to them for wages as drivers and laborers on the road during the 60 days next preceding the appointment of the receiver, in the sums stated, and that the receipts of the business, which should have been paid to them, were applied to the improvements of the road, and to the payment of outstanding liabilities. The petition concluded with a prayer that the amount due petitioners might be made a first lien upon the road, and that the receiver be ordered to pay the same, and for other appropriate relief. And on the same day notice was served on the attorneys for the defendant that application would be made to the court on the 6th day of the same month, or as soon after as counsel could be heard, for an order according to the prayer of the petition. On the 9th day of the same month, no answer having been filed to the petition, the court made an order referring the claims to the receiver with directions to ascertain the amounts due the respective petitioners, and to report the same on the following day. In compliance with the order the receiver made his report of such amounts, which the court approved, and thereupon ordered the sums so found due the respective petitioners to be a first lien on the railway, and that, if such amounts should not be paid within 30 days thereafter, execution issue therefor against said property. To this order the appellant excepted.

When claims against a fund or property in the hands of a receiver are presented to the court, the practice is to refer the claims to the receiver, with directions to him to ascertain whether the claims are just; and, if he so finds and reports, the court allows the claims. In this action of the court we find no error.

But the further question arises, was the order of the court, making the amounts found due the petitioners a first lien on the railway, erroneous? When property is in the hands of a receiver that ought to be used, and its preser-

vation or use requires an expenditure for the employment of labor upon or in connection with it, or other reasonable and necessary expenditures for a like purpose, such expenditures ought to be made out of the earnings or proceeds of the property. The necessity for the application of this principle is most apparent when the property consists of a railroad operated for the public convenience and benefit. Depreciation of such property, and the loss of its income, are the consequences of a failure to use and operate it, and this cannot be done without the expenditure of money for labor and for other purposes. Such expenditures benefit its owners and incumbrancers. It would be inequitable for the holders of the trust-deed to take the road and the proceeds of its use discharged from the claims of the petitioners, and to apply them to the payment of its bonds. And, though the petitioners performed the labor for which they ask compensation in the operation of the road before the receiver took possession of it, the proceeds of its use and the benefit from its continued use were the result in part of the petitioners' labor, and the payment thereof should precede the payment of the debt secured by the deed of trust. In *Miltonberger* v. *Railroad Co.*, 106 U. S. 311, 1 Sup. Ct. Rep. 140, the court said: "Many circumstances may exist which may make it necessary and indispensable to the business of the road and the preservation of the property for the receiver to pay pre-existing debts of certain classes out of the earnings of the receivership, or even the *corpus* of the property, under the order of the court, with a priority of lien. Yet the discretion to do so should be exercised with very great care. The payment of such debts stands *prima facie* on a different basis from the payment of claims arising under the receivership, while it may be brought within the principle of the latter by special circumstances. It is easy to see that the payment of unpaid debts for operating expenses, accrued within ninety days

due by a railroad company suddenly deprived of the control of its property, due to operatives in its employ, whose cessation from work simultaneously is to be deprecated in the interest both of the property and the public, and the payment of limited amounts due to other and connecting lines of roads for materials and repairs and for unpaid ticket and freight balances, the outcome of indispensable business relations, where a stoppage of the continuance of such business relations would be a probable result in case of non-payment, the general consequence involving largely, also, the interest and accommodation of travel and traffic, may well place such payments in the category of payments to preserve the mortgaged property in a large sense by maintaining the good-will and integrity of the enterprise, and entitle them to be made a first lien." To the same effect are the following cases: *Union Trust Co.* v. *Illinois M. Ry. Co.*, 117 U. S. 434, 6 Sup. Ct. Rep. 809; *Fosdick* v. *Schall*, 99 U. S. 235; *St. Louis, A. & T. H. R. Co.* v. *Cleveland, C., C. & I. Ry. Co.*, 125 U. S. 658, 8 Sup. Ct. Rep. 1011. The orders and decree appealed from are affirmed.

ANDERSON, J., and BLACKBURN, J., concurred.